

# In the
# Missouri Court of Appeals
# Western District

IN THE INTEREST OF: C.L.F.,

                APPELLANT,

v.

JUVENILE OFFICER,

                RESPONDENT.

**WD84982**

**OPINION FILED:**

**December 20, 2022**

---

**Appeal from the Circuit Court of Harrison County, Missouri
The Honorable Steven D. Hudson, Judge**

**Before Division Two: Lisa White Hardwick, Presiding Judge,
Thomas N. Chapman, Judge and Janet Sutton, Judge**

C.L.F. appeals from an order entered by the Juvenile Division of the Circuit Court of

Harrison County ("juvenile court"),[1] which dismissed her juvenile proceeding and transferred her

to a court of general jurisdiction for criminal prosecution as an adult pursuant to section

211.071.[2] C.L.F. contends that the juvenile court abused its discretion in certifying her to be

prosecuted as an adult under the general laws. The juvenile court's order is affirmed.

---

[1] Although the juvenile division of a circuit court is not a separate court but a division of the circuit court, we use the term "juvenile court" for ease of reference, consistent with the term's usage in Chapter 211, RSMo. *See* § 211.021(3) (defining "juvenile court" to mean "the juvenile division or divisions of the circuit court of the county, or judges while hearing juvenile cases assigned to them").

[2] Unless otherwise indicated, statutory references are to RSMo 2016, as updated through the 2021 cumulative supplement.

**Background**

On August 9, 2021, the Juvenile Officer filed a petition in the juvenile court alleging that C.L.F., who was born in November of 2004, was in need of care and treatment pursuant to section 211.031.1(3) because C.L.F. was alleged to have committed six offenses in violation of state laws, five of which would constitute felonies if committed by an adult. The juvenile officer alleged that C.L.F. committed the following offenses, which would be felonies if committed by an adult: (1) unlawful use of a weapon, a class E felony pursuant to section 571.030 RSMo Cum. Supp. 2018, by knowingly possessing a semi-automatic firearm while possessing the controlled substance, Phentermine, knowing of its presence and nature; (2) first degree tampering, a class D felony pursuant to section 569.080, by knowingly and without the consent of the owner possessing an automobile owned by another; (3) receiving stolen property,[3] a class D felony pursuant to section 570.030 RSMo Cum. Supp. 2018, by receiving a semi-automatic firearm knowing or believing it had been stolen with the purpose of depriving the owner of the firearm; (4) receiving stolen property, a class D felony pursuant to section 570.030 RSMo Cum. Supp. 2018, for receiving a debit card knowing or believing it had been stolen with the purpose of depriving the owner of the card of the property; (5) possession of a controlled substance, a class D felony pursuant to section 579.015, by knowingly possessing Phentermine, knowing of its presence and nature. The petition also alleged that C.L.F. violated section 579.015 by knowingly possessing the controlled substance marijuana in an amount of more than ten grams, a class A misdemeanor.

---

[3] Section 570.030.1(3) RSMo Cum. Supp. 2018 classifies as the offense of "stealing" conduct that formerly constituted the crime of "receiving stolen property" under section 570.080 RSMo 2000. Section 570.080 was repealed effective January 1, 2017.

On September 17, 2021, the Juvenile Officer filed a Motion to Dismiss to Allow Prosecution Under General Law, which requested that the juvenile court dismiss the juvenile cause of action and certify C.L.F. to be prosecuted as an adult under the general laws pursuant to section 211.071. The motion was based on the allegations of the five offenses which would be felonies and the Juvenile Officer's position that C.L.F. was not a proper subject to be dealt with under the Juvenile Code based on the statutory criteria set forth in section 211.071.6.

The Juvenile Officer filed a report pursuant to section 211.071.6 containing information relevant to the criteria to be considered by the court in determining whether an order of dismissal and certification was proper. The report contained information regarding the alleged offenses in the petition and C.L.F.'s prior history with the juvenile system. Based on this history, the Juvenile Officer asserted that C.L.F. was beyond rehabilitation under the Juvenile Code.

On November 5, 2021, a hearing was held in front of the juvenile court. The court took judicial notice of two prior juvenile causes of action. When C.L.F. was thirteen, she was found to have committed acts which would constitute the class A misdemeanor of fraudulent use of a credit device, another class A misdemeanor of fraudulent use of a credit device, and the class A misdemeanor of assault in the fourth degree. C.L.F. was directed to complete a psychological evaluation, a restorative justice program and community service, which C.L.F. subsequently completed. C.L.F. was then discharged from further supervision of the juvenile court. When C.L.F. was fifteen, she was found to have committed acts which would constitute aiding in the commission of the class B felony of burglary in the first degree by acting with the purpose of promoting or facilitating the offense of burglary in the first degree in acting as a lookout for E.M., who unlawfully entered the home of two persons for the purpose of committing assault therein. C.L.F. was also found to have aided in the commission of the class C misdemeanor of

3

assault in the fourth degree by acting as a lookout when E.M. struck M.B. multiple times on the head. As a result, C.L.F. was committed to the custody of the Division of Youth Services for an indefinite term.

At the hearing, Jonathan Harris, an officer with the Bethany Police Department, testified that he was investigating a number of break-ins and thefts in Bethany, Missouri in August of 2021. Harris was contacted by Jacob Denum, a deputy sheriff with the Harrison County Sheriff's Office regarding social media postings about a possible stolen vehicle and a photograph of a minor with a potentially stolen gun pointed at her head. Harris testified that he and Denum were given consent to enter and search the home of J.F. (C.L.F.'s mother) by J.F. C.L.F. was located in her bedroom with her boyfriend. Guns, alcohol, stolen debit cards, the controlled substance phentermine, and THC edibles were located in C.L.F's bedroom.

Jack Hutton, a deputy sheriff with the Harrison County Sheriff's Office, testified that he took a report from Sara Campbell, whose vehicle was stolen in August 2021.

Deputy Denum testified that he was contacted by Campbell regarding social media information about Campbell's vehicle and where it was located. Denum testified that there was a picture of C.L.F. on social media along with a message indicating that C.L.F. had the vehicle and had hidden it where it would not be found in Bethany. Denum testified that he also saw a picture on a cell phone in which C.L.F. held a purple handgun to her head while laying in a bed. Denum testified that his office had previously received information regarding the theft of a purple handgun. Denum testified to the same general details regarding his and Officer Harris's entry into and search of C.L.F.'s room. Denum testified that C.L.F. informed him that the purple handgun was in the top shelf of her closet. Denum testified that C.L.F. provided Denum with the location of Campbell's vehicle and provided Denum with the keys to the vehicle. Denum

4

testified that he identified pills found in the room as Phentermine, which Denum testified is a controlled substance weight-loss supplement.

Deputy Juvenile Officer Joe Hamilton testified regarding his familiarity with C.L.F. and her prior juvenile adjudications. Hamilton testified that if the present allegations were left to be addressed in the juvenile court, and, if C.L.F. was ultimately committed to the Division of Youth Services, then the maximum amount of time that C.L.F. would stay with the Division of Youth Services would be until she was 18, which was approximately one year from the time of the November 5, 2021 hearing. Hamilton testified that C.L.F.'s one prior commitment and two prior stays at the Division of Youth Services had not effected a change in C.L.F.'s behavior. Hamilton testified that C.L.F.'s behaviors had been escalating, that the allegations of her conduct involved multiple victims, and that C.L.F. demonstrated knowledge of an active involvement in crimes against multiple victims. Hamilton testified that if C.L.F. was not certified to be prosecuted under the general laws, the only option available to the juvenile court would be the Division of Youth Services, but that C.L.F. had been placed with the Division of Youth Services twice previously with no success.

J.F., C.L.F.'s mother, testified regarding comments made by C.L.F. indicating that C.L.F. did not take her behaviors or juvenile proceedings seriously. J.F. testified that C.L.F. informed J.F. that C.L.F. could do anything she pleased until she was eighteen, and that C.L.F. referred to the Division of Youth Services as "kiddy jail." J.F. testified that she supported C.L.F. being certified as an adult.

Following the hearing, the juvenile court entered an order which dismissed the juvenile cause of action and transferred C.L.F. to the court of general jurisdiction for prosecution. The order included findings regarding the statutory criteria set forth in section 211.071.6. The

5

juvenile court concluded that C.L.F. was not a proper subject to be dealt with under the provisions of the Juvenile Code.

C.L.F. now appeals to this court.

## Standard of Review

In reviewing a section 211.071 order[4] of dismissal to permit a child to be prosecuted under the general laws, an appellate court must determine whether the juvenile court abused its discretion based on the totality of the circumstances. *J.N.W. v. Juvenile Officer*, 643 S.W.3d 618, 631 (Mo. App. W.D. 2022). "A juvenile court abuses its discretion if its 'ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary as to shock the sense of justice and indicates a lack of judicial consideration.'" *Id.* (quoting *In Interest of T.M.L.*, 615 S.W.3d 100, 102 (Mo. App. E.D. 2020)). "In reviewing a juvenile court's determination for abuse of discretion, we will not reweigh the evidence or determine the reliability or credibility of witnesses." *Id.* (citing *State v. Thomas*, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002)).

## Analysis

In her sole point on appeal, C.L.F. contends that the circuit court abused its discretion in certifying her to be prosecuted as an adult because she was a proper subject to be treated and rehabilitated in the juvenile system. In particular, C.L.F. argues that the allegations in the petition were not serious, were not violent, and did not implicate issues of public safety; that her pattern of behavior did not show that she was beyond rehabilitation under the juvenile code; and that she was not sophisticated or mature.

Regarding certification hearings pursuant to section 211.071, section 211.071.6 provides:

---

[4] An order of dismissal under section 211.071 is appealable even when not denominated as a "judgment." *See J.N.W. v. Juvenile Officer*, 643 S.W.3d 618, 627-28 (Mo. App. W.D. 2022).

6

A written report shall be prepared in accordance with this chapter developing fully all available information relevant to the criteria which shall be considered by the court in determining whether the child is a proper subject to be dealt with under the provisions of this chapter and whether there are reasonable prospects of rehabilitation within the juvenile system. These criteria shall include but not be limited to:

(1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;

(2) Whether the offense alleged involved viciousness, force and violence;

(3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;

(4) Whether the offense alleged is part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;

(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

(6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;

(7) The age of the child;

(8) The program and facilities available to the juvenile court in considering disposition;

(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and

(10) Racial disparity in certification.

If the court dismisses the petition to permit the child to be prosecuted under the general law, the court's dismissal order must contain certain findings, including "[f]indings showing the reasons underlying the court's decision to transfer jurisdiction." § 211.071.7(4). In assessing the criteria set forth in section 211.071.6, "the juvenile court is entitled to significant discretion in reaching its certification determination." *Interest of T.D.S.*, 643 S.W.3d 510, 519 (Mo. App. E.D. 2021)

7

(citing *State v. Woodworth*, 941 S.W.2d 679, 697 (Mo. App. W.D. 1997)). "The certifying court need not give equal weight to each of the listed factors, nor is it required to make an express finding on each one." *Woodworth*, 941 S.W.2d at 697.

The juvenile court found that C.L.F. was not a proper subject to be dealt with under the provisions of the Juvenile Code, because:

(a) the offenses alleged, Unlawful use of a Weapon, Tampering in the First degree, Receiving Stolen Property, Receiving Stolen Property, and Possession of a Controlled Substance, in violation of Section(s) [5]71.030, 569.080, 570.030, 570.030 and 579.015, RSMo. are serious;

(b) [The juvenile court did not find that the offenses alleged involved viciousness, force and violence];[5]

(c) The offenses alleged are offenses against property;

(d) The offenses alleged are part of a repetitive pattern of offenses which indicates that the juvenile may be beyond rehabilitation under the juvenile code;

(e) The record and history of the juvenile reflects the juvenile has had the following contacts with the juvenile justice system as reflected in the court summary and the record and history of the juvenile reflects the juvenile has previously received the following rehabilitative services commitments to Division of Youth Services and the juvenile failed to derive benefit from said services;

(f) The juvenile is an emotionally sophisticated and physically mature 16 year old;

(g) No placement program or facility available to the Court for the juvenile's treatment under the Juvenile Code would provide sufficient protection to the community;

(h) Protection of the community requires transfer to the court of general jurisdiction;

---

[5] The order essentially set forth the statutory criteria under section 211.071.6 with a check box next to the court's findings on the ten factors set forth under section 211.071.6. The court checked each of the boxes next to its findings regarding the statutory criteria with the exception of the factor provided in section 211.071.6(2). By declining to check this box, the juvenile court expressed its finding that the offenses alleged did not involve viciousness, force and violence. *See* § 211.071.6(2) (requiring the court to consider "[w]hether the offense alleged involved viciousness, force and violence").

(i) There was no evidence that the juvenile would benefit from treatment in a juvenile facility. Given the seriousness of the offenses, the age of the juvenile and the limited time for rehabilitating someone who is charged with these particular offenses, and the fact that no evidence was adduced to demonstrate the availability of a facility which could guarantee the juvenile's confinement, it is apparent that there are no reasonable prospects for rehabilitation.

(j) race per section 211.071.6(10), RSMo. Court finds there to be no racial disparity.

C.L.F. first argues that the offenses alleged in the petition were not serious and did not implicate public safety. C.L.F. concedes that all felonies are serious, but points out that certification proceedings under section 211.071 require allegations that a juvenile has committed an offense which would constitute a felony if committed by an adult. *See* § 211.071.1.[6] C.L.F. contends that, in assessing whether a particular felony is serious for purposes of section 211.071.6(1), the real question is the degree to which the offense is serious compared to all other felonies.

C.L.F. is correct that a section 211.071 proceeding will invariably involve offenses which would constitute felonies if committed by an adult. Thus, the mere fact that the offense would constitute a felony does not by itself render the offense serious. However, in assessing whether a particular offense is serious, we disagree that the comparison point in determining whether a particular offense is serious is all other felonies, such that the fact that more serious felonies were not committed negates the possibility that a comparatively less serious felony could be considered serious. The focus of the juvenile court remains on the juvenile and the seriousness

---

[6] Section 211.071.1 begins: "If a petition alleges that a child between the ages of twelve and eighteen has committed an offense which would be considered a felony if committed by an adult, the court may, upon its own motion or upon motion by the juvenile officer, the child or the child's custodian, order a hearing and may, in its discretion, dismiss the petition and such child may be transferred to the court of general jurisdiction and prosecuted under the general law[.]" The provision goes on to set forth circumstances, not implicated in this case, in which the court must hold a certification hearing depending on the particular felony the offense would constitute or the number of prior unrelated offenses. § 211.071.1.

of the offenses alleged.  In assessing the statutory criteria, such as the seriousness of an alleged offense, the juvenile court is entitled to significant discretion.  *See Interest of T.D.S.*, 643 S.W.3d at 519 (citing *Woodworth*, 941 S.W.2d at 697).

In this matter, C.L.F. was alleged to be in possession of a stolen firearm and a stolen debit card and was alleged to be in possession of a vehicle of another without consent.  The factual basis underlying these allegations indicated that these offenses arose from separate acts, involved multiple victims, and were related to a pattern of break-ins and thefts.  Although the juvenile court was not required to find that these offenses were serious, it was within the juvenile court's discretion to find that these offenses were serious and that the protection of the community required transfer to a court of general jurisdiction.[7]

Moreover, although Missouri courts have recognized that the seriousness of an offense is the dominant criterion among the statutory criteria, *see Thomas*, 70 S.W.3d at 504, a juvenile court's determination is based on consideration of a wide array of factors.  The statutory criteria governing the juvenile court's determination sets forth a list of ten non-exhaustive factors "which shall be considered by the court in determining whether the child is a proper subject to be dealt

---

[7] C.L.F. cites to the Missouri Juvenile Officer Performance Standards (2017) for the proposition that C.L.F.'s alleged offenses did not constitute offenses of a serious nature so as to point toward certification.   In particular, C.L.F. cites to section 5.4 of the Performance Standards which states: "The juvenile officer shall consider the implications of certification and consider certification only in circumstances wherein there are issues of public safety that cannot be mitigated by supervision and services in the juvenile justice system."  The Missouri Juvenile Officer Performance Standards (2017) are attached to the Missouri Supreme Court Rules as Appendix B following Rule 129.  However, Appendix B is not a part of the Missouri Supreme Court Rules.  Specifically, a comment to Rule 110.01 provides: "Appendix B, Missouri Juvenile Officer Performance Standards (2017), is adopted pursuant to section 211.326, RSMo 2000, by the state courts administrator and is attached to, but is not part of, these rules."  This comment was adopted by way of the Missouri Supreme Court's December 23, 2016 Order, which was the same order attaching Appendix B to the Rules.  As the introductory materials to the Missouri Juvenile Officer Performance Standards (2017) indicate, the goal of the standards is to provide guidance and direction regarding the obligations of the juvenile officer.  The focus of the present appeal is whether the juvenile court erred in entering the certification order.  C.L.F.'s reliance on the Missouri Juvenile Officer Performance Standards seems to be based on a misunderstanding that these standards are a part of the Missouri Supreme Court Rules.

with under the provisions of [Chapter 211, RSMo] and whether there are reasonable prospects of rehabilitation within the juvenile system." § 211.071.6. These criteria indicate that the juvenile's history and prospects for rehabilitation are to be considered by the juvenile court in reaching a decision. In this matter, the juvenile court found that the alleged offenses were part of a repetitive pattern of offenses that indicated that C.L.F. may be beyond rehabilitation under the juvenile code. *See* § 211.071.6(4). The juvenile court found that C.L.F. had prior history with the juvenile justice system and failed to derive benefit from the services provided. *See* § 211.071.6(5). The juvenile court found that there was no placement program or facility available to the court for treatment which would provide sufficient protection to the community, and that, given the limited time for rehabilitating a juvenile charged with such offenses, there were no reasonable prospects for rehabilitating C.L.F. in the juvenile justice system. Each of these reasons supporting the juvenile court's determination found support in the record.

C.L.F. argues that her history in the juvenile system did not show that she was beyond rehabilitation or that she was mature. In particular, C.L.F. argues that her history displays the qualities of youth such as immaturity, irresponsibility, impetuousness, and recklessness. *See Miller v. Alabama*, 567 U.S. 460, 476 (2012). Although C.L.F.'s behavior could be seen to be the result of recklessness or susceptibility to influence, there were indications in the record that C.L.F. engaged in a conscious pattern of behavior, and that C.L.F. deliberately violated the law and would continue to do so while in the juvenile justice system. C.L.F.'s mother testified that C.L.F. made statements indicating that she could do whatever she wanted until she was eighteen years old and that the Division of Youth Services was "kiddy jail." These statements would support a finding that C.L.F. had no intention of being rehabilitated by the juvenile justice system. The record indicates that C.L.F.'s prior history with the juvenile justice system was not

effective and that C.L.F. continued to violate state laws after receiving services under the juvenile justice system.

Finally, C.L.F. argues that the juvenile court inappropriately considered C.L.F.'s physical maturity in assessing the statutory criterion set forth in section 211.071.6(6), which requires the juvenile court to consider "[t]he sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living[.]" In this matter, the juvenile court found that C.L.F. "is an emotionally sophisticated and physically mature 16 year old[.]" C.L.F. argues that section 211.071.6(6) does not address the physical maturity of the child such that any consideration the juvenile court gave to C.L.F.'s physical maturity was inappropriate and indicative of an abuse of discretion.

Although the juvenile court's order does not indicate why the juvenile court found C.L.F.'s physical maturity to be relevant in this case, the order does not indicate that the finding regarding C.L.F.'s physical maturity was given significant weight. In *State v. Garbe*, 740 S.W.2d 266, 267-68 (Mo. App. W.D. 1987), our court found no abuse of discretion when the juvenile court cited the fact that the juvenile was "a large (195 pounds), strong youngster" as part of its reason for relinquishing jurisdiction where there were other valid reasons supporting the juvenile court's decision *Id.* In this matter, although we question the relevance of the physical maturity finding, there is no indication that such a finding was given significant weight relative to the other criteria.

Based on the totality of the circumstances, we do not find that the juvenile court abused its discretion in dismissing the juvenile cause of action and permitting C.L.F. to be prosecuted under the general laws. That is, based on C.L.F.'s history with the juvenile justice system, her age at the time of the hearing (sixteen years and 11 months), the lack of available resources to the

12

juvenile court in treating C.L.F. beyond her eighteenth birthday, and the alleged offenses, the juvenile court's ruling was not "clearly against the logic of the circumstances before it and [] so unreasonable and arbitrary as to shock the sense of justice and indicate[] a lack of judicial consideration.'" *See J.N.W.*, 643 S.W.3d at 631.

## Conclusion

The order is affirmed.

_____
Thomas N. Chapman, Judge

All concur.